IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JAMES HARDIN,                              )
                                           )
            Petitioner,                    )
                                           )
v.                                         )          Case No. 1:17-cv-02219-STA-jay
                                           )
JOHNNY FITZ,                               )
                                           )
            Respondent.                    )

## ORDER DIRECTING CLERK TO SEAL DOCUMENT,
## DENYING § 2254 PETITION,
## DENYING CERTIFICATE OF APPEALABILITY,
## AND
## DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner James Hardin has filed a *pro se* habeas corpus petition (the "Petition") pursuant to 28 U.S.C. § 2254.[1]  (ECF No. 1.)  For the following reasons, the Petition is **DENIED**.

## BACKGROUND

In April 2013, a Madison County, Tennessee, grand jury charged Hardin and co-defendant Christopher Cunningham with one count of aggravated burglary and two counts of aggravated robbery.  (ECF No. 12-1 at 5-8.)  The defendants were tried together before a jury.  *State v. Christopher Lee Cunningham and James Cleo Hardin*, No. W2014-00230-CCA-R3-CDC, 2015 WL 1396441, at *1 (Tenn. Crim. App. Mar. 24, 2015), *perm. app. denied* (Tenn. July 20, 2015) (hereinafter "*Hardin*, 2015 WL 1396441").

---

[1]  A document filed in this case contains Hardin's social security number.  The Clerk is **DIRECTED** to **SEAL** ECF No. 12-7.

At trial, Dr. Allyson Anyanwu testified that she and her husband purchased a house in Jackson, Tennessee, for the purpose of making some repairs and using it as a rental property. (ECF No. 12-5 at 36-37.) She recalled that they hired a contactor named Lorenzo Amador to manage the repairs. (*Id.*) Late in the afternoon of January 12, 2013, Anyanwu was in the kitchen when the co-defendants entered the room with a gun to Amador's head. (*Id.* at 38-40.) The gunmen threatened to kill Amador and Hardin ordered "Amador to give him his phone and wallet." *Hardin*, 2015 WL 1396441, at *1. "After Mr. Amador complied, Defendant Hardin approached Dr. Anyanwu and said, 'And what about you? What have you got?'" *Id.* Hardin then "took her phone and put his gun inside of her shirt against her chest." *Id.* After "order[ing] Dr. Anyanwu and Mr. Amador to kneel on the floor, . . . the two men left." *Id.* "On the way out of the house, Defendant Hardin took Dr. Anyanwu's purse that was on the kitchen counter." *Id.* The purse contained items belonging to Dr. Anyanwu, including "another cell phone, her ID, keys, some personal items, and $160 to $200 cash." *Id.* The witness testified that she got a good look at the two men when they were in the well-lit kitchen. *Id.* Amador testified to substantially the same events as recounted by Anyanwu, except that he recalled that the men wore masks. *Id.*

The jury found Hardin and Cunningham guilty "of one count of aggravated burglary and two counts of aggravated robbery." *Id.* Each defendant received an effective sentence of twenty-two years' incarceration. *Id.* Hardin appealed. *Id.* He argued that there was insufficient evidence to establish that he was a perpetrator of the crimes and that the consecutive sentences were improper. *Id.* The Tennessee Court of Criminal Appeals ("TCCA") affirmed (*id.*), and the Tennessee Supreme Court denied permission to appeal (ECF No. 12-14).

In August 2015, Hardin filed a state post-conviction petition.  (ECF No. 15-1 at 3-9.) Following an evidentiary hearing (ECF No. 15-2), the post-conviction court denied relief (ECF No. 15-1 at 21-25).  Petitioner took an unsuccessful appeal.  *Hardin v. State*, No. W2016-00536-CCA-R3-PC, 2017 WL 936529 (Tenn. Crim. App. Mar. 8, 2017).

## DISCUSSION

Hardin filed the Petition on March 29, 2017.  The pleading is somewhat confusing in its presentation of the claims and relies on arguments by reference to state court documents. Nevertheless, the Court has reviewed those incorporated documents and liberally construed the Petition as asserting the following claims, renumbered for ease of discussion:

Claim 1: On post-conviction review, the TCCA unreasonably determined that counsel did not render ineffective assistance.[2]

Claim 2: Trial counsel was ineffective for failing to challenge the sentence under Tenn. Code Ann. § 40-35-115(b)(6).

Claim 3: Trial counsel was ineffective for failing to investigate and present mitigating evidence at sentencing.

Claim 4:  Trial counsel was ineffective for failing to challenge his sentence as a Range I offender.

Claim 5: The indictment's charge of two counts of aggravated robbery, and the resulting convictions, violated Petitioner's right under the Fifth Amendment's Double Jeopardy Clause.

---

[2] The Petition does not seem to challenge the TCCA's post-conviction decision.  However, in an apparent abundance of caution, Respondent addressed the merits of that decision under the AEDPA's standards.  In his Reply, Petitioner stated that he "oppose[d] the Respondent's allegation[] [t]hat the State court's rejection of Petitioner's petition was neither contrary to nor an unreasonable application of clearly established Federal law."  (ECF No. 14-1 at 1.)  The Court therefore liberally construes Hardin's submissions as challenging the state court's denial of relief on post-conviction review.

3

Claim 6: Counsel rendered ineffective assistance at trial and on direct-appeal by failing to argue that the two convictions for aggravated robbery violated his right against double jeopardy.[3]

In the Petition, Hardin acknowledges that he procedurally defaulted most of these claims. He asserts, however, that the defaults should be excused because they were caused, variously, by the ineffective assistance of trial counsel, direct-appeal counsel, post-conviction trial counsel, and post-conviction appellate counsel.

Respondent Johnny Fitz[4] filed the state court record pertaining to Petitioner's criminal proceedings, as well as a Response in opposition to the claims. (ECF No. 12 & 13). He argues that Claim 1 is without merit and that the remaining claims are procedurally defaulted.

Petitioner submitted a Reply on June 20, 2017. (ECF No. 14.) He reiterates that his double jeopardy claim, Claim 5, was procedurally defaulted due to the ineffective assistance of his criminal defense attorney's failure to raise the issue at trial and on direct appeal. He also maintains that post-conviction counsel's failure at the initial post-conviction proceeding and on post-conviction review to assert those trial-counsel and direct-appeal counsel claims is cause to excuse *those* procedural defaults.[5]

---

[3] Petitioner has cast his ineffective assistance claim variously as counsel's failure to argue in a motion for new trial that his two aggravated robbery convictions violated his right against double jeopardy and counsel's failure to challenge on double jeopardy grounds the consecutive sentences for those convictions. (ECF No. 1-2 at 21-22.)

[4] The Clerk is **DIRECTED** to modify the docket to reflect Johnny Fitz as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); Fed. R. Civ. P. 25(d).

[5] The Reply also correctly pointed out that Respondent failed to file the state court record pertaining to the post-conviction proceedings. Respondent subsequently filed those records. (ECF No. 15.)

On May 16, 2018, Hardin filed a motion in state court to reopen his post-conviction case. (ECF No. 23-3.)  On the same day, he submitted a motion in the present matter to hold these proceedings in abeyance pending the resolution of his motion to reopen.  (ECF No. 19.)  He explained that he sought to reopen his post-conviction proceedings for the purpose of exhausting certain claims.  By order dated August 23, 2018, the Court granted the motion, stayed the proceedings, and directed the Clerk to administratively close the case.  (ECF No. 20.)  The Court advised that either party could move to reopen this case upon the conclusion of the state-court proceeding.

Hardin's motion to reopen his post-conviction case was denied by the state court on June 6, 2018.  (ECF No. 23-5.)  On May 6, 2019, Petitioner filed a motion to lift the stay in this case and for leave to file an amended petition.  (ECF No. 23.)  In part, the proposed amended petition reasserted arguments for why the procedural defaults should be excused and also asserted a claim of actual innocence to overcome the defaults.  (*See id.* at 6, 10.)  By order dated May 7, 2019, the Court granted the motion to the extent it sought to have the stay lifted and denied the motion insofar as it asked for leave to amend the petition.  (ECF No. 24.)  The Court nevertheless acknowledged the arguments set forth in the proposed amended petition relating to the procedural defaults, informed the parties that it would consider those arguments at the time it assessed the Petition's claims, and granted Respondent leave to file a short supplemental response.  Respondent submitted the Supplemental Response on May 21, 2019.  (ECF No. 25.)  He reiterates the arguments he set forth in the Response as to why the procedural defaults are not excused, and further posits that Petitioner has not established a gateway claim of actual innocence to overcome the defaults.

## I.  Legal Standards

### A.  Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (the "AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court."  *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case."  *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state

7

court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).  To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750.  The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of a substantial ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).  A claim is substantial if it has "some merit." *Martinez*, 566 U.S. at 14.

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995).  To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.  He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

### B.  Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020), *cert. denied*, No. 20-7918, 2021 WL 2519379 (U.S. June 21, 2021).  To succeed on such a claim, a

petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive

9

the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II.    Claim 1

Petitioner asserts that the TCCA's decision denying relief on post-conviction review is unreasonable. In his brief before that tribunal, he maintained that trial counsel rendered ineffective assistance by failing to meet with him more than two times, adequately prepare for trial, call alibi witness Michelle Douglas, obtain video surveillance footage from a nearby store, and call his mother, Tasandra Hardin, to testify in mitigation at sentencing. (ECF No. 15-3 at 11-13.) The TCCA rejected the arguments and determined that counsel had not been ineffective in any of the ways alleged. *Hardin*, 2017 WL 936529, at *3-4.

Respondent argues that the state court's decision easily meets the AEDPA's deferential standards. The Court agrees.

At the post-conviction evidentiary hearing, "Petitioner testified that trial counsel represented him at trial and on appeal." *Id.* at *1. He recalled "that counsel met with him only twice before trial and that both meetings occurred the day before trial." *Id.* Hardin insisted that he had "wanted Michelle Douglas to testify at trial" to establish that he was with her when the

10

crimes occurred.  *Id.* at *2.  He remembered that he "did not have Ms. Douglas' address, but his sister had Ms. Douglas' telephone number."  *Id.*  He testified that he told counsel about the alibi witness and gave his sister's number to counsel, but that counsel later reported to him that he could not find Ms. Douglas.  *Id.*

Petitioner further testified that he believed counsel "should have obtained video surveillance from '[t]he neighborhood store.'"  *Id.*  Hardin "told counsel about the video, but counsel did not present the video at trial."  *Id.*  Petitioner also recalled that his mother, Tasandra Hardin, "was present at his sentencing hearing, but counsel did not call her to testify."  *Id.*  "On cross-examination, the Petitioner testified that his mother 'could have testified good on [his] behalf.'"  *Id.*

Counsel testified "that he met with the Petitioner '[s]everal' times in jail and when the Petitioner came to court."  *Id.*  He remembered that he "did not have any trouble communicating with the Petitioner, and the Petitioner received discovery materials."  *Id.*  Regarding Ms. Douglas, counsel recalled "receiv[ing] 'a family member's name and a number.'"  *Id.*  He explained, however, that he was unable to find Ms. Douglas and that he told this to Petitioner.  *Id.*  Counsel further testified that he talked to Petitioner about the store video tape and that his "'office checked on it and to the best of [his] memory, the tape wasn't available.'"  *Id.*  He did not recall speaking with his client about calling his mother as a witness at sentencing.  *Id.*  He explained, however, that at the time he "didn't think it was the thing to do to put his mother on the stand," because he "didn't think it would bear any mitigating circumstances" and that having her testify "'might actually aggravate[ ] the circumstances.'"  *Id.*

When asked on cross-examination how many times he met with Hardin before trial, counsel replied "Well, I think it was more than two times." *Id.* He reiterated that "his office 'made attempts to contact the person that Mr. Hardin had put us in touch with and we requested [that] the information on Ms. Douglas be provided to us and it wasn't ever.'" *Id.* Counsel confirmed "that he did not interview any witnesses before trial but that he read the discovery materials and knew what the State's witnesses were going to say at trial." *Id.* Regarding the store surveillance video, "he could not remember how long he waited to try to obtain" it, but recalled that four months had passed before Petitioner was indicted. *Id.* "Regarding the Petitioner's mother testifying at the sentencing hearing, counsel said he 'didn't think it was a good idea' because '[i]t was a tough set of facts and he wasn't going to testify and I didn't think that she could help him under the circumstances.'" *Id.* Counsel recalled that he "did not present any witnesses at the sentencing hearing and 'just relied on the presentence report.'" *Id.*

The post-conviction court denied relief in a written order. (ECF No. 15-1 at 22-25.) The court "credit[ed] Attorney Morris' testimony" regarding his efforts and conduct during his representation of Petitioner. (*Id.* at 22.) The court found, specifically, that counsel "met with his client 'several times' before the trial date and that he investigated the case after discussion with this client"; that counsel "fully investigated the possibility of an 'alibi witness' Michelle Douglas, but was never able to locate her"; and that counsel "fully investigated the possibility of a 'video' of his client from a store in the area, but no video was ever located." (*Id.*)

The court found Petitioner's testimony to be not credible. (*Id.*) In particular, the court did

> not believe at all Mr. Hardin's testimony that his attorney 'only met with him once,' that being the day before his trial. Court records indicate that on at least two occasions prior to his trial date, that Mr. Hardin and Attorney Morris appeared in Court together for appearances and plea cut-off dates.

(*Id.* (emphasis in original).)  The court also found that Petitioner "failed to present any credible evidence as to what his mother would have said at his sentencing hearing <u>if</u> she had been called as a witness."  (*Id.* at 23 (emphasis in original).)  In particular, the court noted, he "failed to call her at his own post-conviction hearing to show what her testimony would have been[.]"  (*Id.*)  The court concluded that Petitioner failed to prove that counsel rendered ineffective assistance in the ways alleged.  (*Id.*)

On appeal, the TCCA first identified *Strickland*'s standards as governing its analysis. *Hardin*, 2017 WL 936529, at *4.  Examining the record from the court below, the appellate court observed that "the post-conviction court accredited trial counsel's testimony that he met with the Petitioner several times before trial and prepared for trial, that he was unable to locate Ms. Douglas, and that he was unable to obtain the store's video surveillance."  *Id.*  The court "note[d] that the Petitioner . . . failed to explain what more counsel should have done to prepare for trial, that he [did] not explain[] how the video would have helped his case, and that he did not present Ms. Douglas at the evidentiary hearing."  *Id.*  "As to the Petitioner's claim that counsel should have had his mother testify at his sentencing hearing," the TCCA concluded that Petitioner's failure to "have his mother testify at the evidentiary hearing" meant that any purported "benefit she may have offered to his case" was mere "speculat[ion]."  *Id.*  The court therefore "conclude[d] that the post-conviction court did not err by denying post-conviction relief."  *Id.*

Because the TCCA identified *Strickland*'s standards and applied them to the facts of Petitioner's case, its determination that counsel did not render ineffective assistance is not "contrary to" controlling Supreme Court.  *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill

state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The state appellate court's decision is also not based on unreasonable factual determinations. The record supports the court's finding that Petitioner did not call his mother to testify at the post-conviction hearing as to what her testimony would have been had she addressed the criminal trial court at sentencing. As for the lower court's decision to accredit counsel's testimony over Petitioner's, that credibility determination was a factual finding which the TCCA reasonably declined to disturb.[6] This Court, sitting in federal habeas, will not disrupt the TCCA's own refusal to disregard the lower court's determination. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Given the facts before it, the TCCA did not unreasonably conclude that Petitioner failed to establish any deficiency in counsel's performance or that counsel's conduct prejudiced him. The court's decision is therefore not an unreasonable application of *Strickland*'s standards. Claim 1 is **DENIED**.

## III.    Claims 2, 3, and 4

These claims pertain to counsel's alleged ineffective assistance at sentencing. Petitioner raised the issues in his post-conviction petition, but he did not litigate them at the post-conviction hearing or raise them on post-conviction review. He acknowledges that he procedurally defaulted

---

[6] Credibility determinations are findings of fact for purposes of federal habeas review. *See McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014) ("fact-based determination[s] subject to scrutiny under § 2254(d)(2)" include "facts in the sense of a recital of external events and the credibility of their narrators") (quoting *Thompson v. Keohane,* 516 U.S. 99, 110 (1995)).

the claims, but he invokes *Martinez* in an attempt to establish cause to excuse the defaults.  He also asserts that his actual innocence overcomes the procedural defaults.

Respondent maintains that the claims are barred from federal habeas review.  Specifically, he argues that Hardin has not established a gateway claim of actual innocence, that post-conviction appellate counsel's alleged ineffective assistance cannot excuse the procedural defaults, and that any presumed ineffective representation by post-conviction trial counsel does not lift the procedural bar because the claims are not "substantial," as required by *Martinez*.  *See Martinez*, 566 U.S. at 14.

### A.  Actual Innocence

As discussed above, a petitioner may "overcome" his procedural defaults by establishing a "gateway" claim of actual innocence.  *Schlup*, 513 U.S. at 314, 316.  To open the gateway, he must show that, in light of new exculpatory evidence, "it is more likely than not that no reasonable juror would have convicted him."  *Id.* at 327.

Hardin alleges generally that he is actually innocent of his crimes.  He does not, however, identify any new evidence in support of the assertion.  He therefore has not presented a valid gateway claim of actual innocence to overcome his procedural defaults.

### B.  Post-conviction Appellate Counsel's Alleged Ineffective Assistance

In support of his request that the Court review his procedurally defaulted claims on the merits, Petitioner posits that his defaults should be excused due to the ineffective assistance of post-conviction appellate counsel for failing to raise the claims on post-conviction review.  The argument is unavailing.  It is well established that the ineffective assistance of post-conviction

15

appellate counsel cannot excuse a procedural default. *See Young v. Westbrooks*, 702 F. App'x 255, 267 (6th Cir. 2017) (citing *Coleman*, 501 U.S. at 754).

### C.  Post-Conviction Trial Counsel's Alleged Ineffective Assistance

Hardin alleges that he raised Claims 2, 3, and 4 in his post-conviction petition but that post-conviction trial counsel did not develop the issues at the evidentiary hearing.  The post-conviction record supports the assertion.  (*See* ECF No. 15-1 & 15-2.)  After briefing in this case was completed, the Sixth Circuit held that "post-conviction counsel's failure to take all possible steps to fully develop a claim cannot be the 'cause' of a default as long as counsel properly raised the claim and made a good-faith effort in presenting it." *Rogers v. Mays*, No. 19-5427, --F. 4th--, 2022 WL 3081318, at *15 (6th Cir. Aug. 3, 2022) (citing *Hugueley v. Mays*, 964 F.3d 489, 499 (6th Cir. 2020)).  Even assuming, without deciding, that Hardin's post-conviction trial counsel did not take all possible steps to fully develop Claims 2, 3, and 4, counsel's conduct does not serve to excuse the procedural defaults.  As explained immediately below, none of the claims are "substantial," meaning they do not have "some merit." *Martinez*, 566 U.S. at 14.

### 1.  Claim 2

Petitioner contends that trial counsel rendered ineffective assistance by failing to challenge his sentence under Tenn. Code Ann. § 30-35-115(b)(6).  He argues that "[t]here was no evidence in the record that the court even considered two Wilkerson factors before ordering consecutive sentences: (1) that an extended sentence was necessary to protect the public from further criminal conduct by Petitioner and (2) consecutive sentencing was reasonably related to severity of the evidence." (ECF No. 1-2 at 7.)  Respondent argues that the "claim is clearly meritless as the trial

court sentenced the petitioner within the range of the statutory guidelines after considering all relevant evidence and pertinent mitigating factors." (ECF No. 13 at 11.)

In relevant part, Tenn. Code Ann. § 30-35-115(b) authorizes a sentencing court to impose sentences consecutively if it "finds by a preponderance of the evidence that . . . (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high [or] (6) The defendant is sentenced for an offense committed while on probation[.]" Tenn. Code Ann. § 40-35-115(b). In *State v. Wilkerson,* 905 S.W.2d 933 (Tenn. 1995), the Tennessee Supreme Court held that "when a court is ordering consecutive sentences because it finds the defendant to be a dangerous offender, it must also find that the 'extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences ... reasonably relate to the severity of the offenses committed.'" *State v. Laughlin*, No. E20070-1988-CCA-R3-CD, 2008 WL 4949208, at *10 (Tenn. Crim. App. Nov. 20, 2008) (quoting *Wilkerson*, 905 S.W.2d at 939). The state high court subsequently made clear that *Wilkerson*'s requirement that the sentencing court make additional findings "is limited to cases involving consecutive sentencing of 'dangerous offenders.'" *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999). The court reasoned that the other grounds listed in the statute have "self-contained limits," but the "dangerous offender category is the most subjective and hardest to apply." *Id.*

Even when a court has found the existence of one of the statutory bases for running sentences consecutively, the court must still be satisfied that consecutive sentencing is "justly deserved in relation to the seriousness of the offense" and that "the length of

[the] consecutive sentence [is] 'no greater than that deserved for the offense committed.'" *Hardin*, 2015 WL 1396441, at *4 (quoting Tenn. Code Ann. §§ 40-35-102(1), 40-35-103(2)).

At Hardin's sentencing hearing, the judge rejected counsel's request that the aggravated robbery sentences be run concurrently and expressly addressed the propriety of imposing the sentences consecutively.  (ECF No. 12-3 at 31-32.)  The judge first found the existence of one the circumstances required under § 30-35-115(b), namely, that "each of these two different defendants were on probation when they committed these offenses."  (*Id.* at 31.) He then provided other justifications for the lengthy effective sentence, including the fact that the co-defendants violated probation by "committing a federal offense by being in possession of a gun" and the severity of the crimes.  (*Id.* at 32.)   "[C]onsidering all of this," he remarked, "the Court does find that there is a need for consecutive sentences" and that the "aggregate sentence of 22 years reasonably relates to the offenses for which the defendants have been convicted and especially in light of the prior criminal history of each defendant."  (*Id.*)

Petitioner cannot show that counsel rendered ineffective assistance.  The sentencing judge did not base his decision to run the aggravated burglary sentences consecutively on a finding that Hardin was a dangerous offender.  The judge was therefore not required to make *Wilkerson* findings.  Accordingly, counsel did not perform deficiently by failing to raise a futile argument and Petitioner was not prejudiced by his conduct.

Because the procedurally defaulted claim is not substantial, the bar to federal habeas review has not been lifted.  Claim 2 is **DISMISSED**.

18

### 2. Claim 3

Petitioner maintains that trial counsel rendered ineffective assistance by failing to investigate and present mitigating evidence. Specifically, he alleges that counsel failed to present at sentencing mitigating evidence that "he has demonstrated a willingness and ability to conduct himself as a law abiding citizen for long periods of time"; he "professes a willingness to undergo individual and group counseling to address any character defects that need to be addressed"; "[h]e was mostly raised by his mother"; "[h]e had his first children (twins) . . . when he was only 17 years old"; "[h]is limited criminal history was in large part motivated by his desire to provide for his children and the children's mother"; "[h]is life has been dedicated to serving his children, mother, sister, and brothers"; and he "attended classes at Tennessee Technical Institute for welding," has "learned valuable skills and hopes to complete a welding certification," and "plans to find work as a welder." (ECF No. 1-2 at 6.) Petitioner argues that, had counsel presented all of these factors in mitigation, "there is a reasonable probability that trial and sentencing court would have found Petitioner to be outside the spirit of consecutive sentencing consideration." (*Id.*)

Respondent maintains that the sentencing court was apprised of several of these factors. He also argues that Petitioner has not shown that counsel's failure to present the remaining factors at sentencing was "outside the wide range of professionally competent assistance" and has provided nothing to suggest that he was prejudiced by counsel's conduct. (ECF No. 13 at 10 (quoting *Strickland*, 466 U.S. at 690).) Respondent's position is well taken.

In anticipation of sentencing, the Tennessee Department of Correction, Probation & Parole prepared a presentence report. (ECF No. 12-7.) The report recounted Petitioner's criminal history and the dates of his convictions. The document also discussed Hardin's mental health issues and

19

his involvement in a treatment program called "Compass." (*Id.* at 9.) The report indicated that Petitioner "attend[ed] North Side High School in Jackson, TN but did not graduate and did not obtain his GED." (*Id.*)

At the sentencing hearing, the judge stated that he had read and considered the presentence report, and he recounted in open court each of Hardin's prior offenses. (ECF No. 12-3 at 21, 25-26.) He also expressly considered the fact that Hardin was only 19 years old when he committed the crimes for which he was being sentenced, had mental health issues, and limited education. (*Id.* at 27-29.)

Petitioner has failed to show that counsel rendered ineffective assistance at sentencing. The judge was apprised of Hardin's criminal history and his willingness to participate in treatment programs. Petitioner does not explain what additional information about those factors counsel should have brought to the court's attention. To the extent counsel failed to present the remaining mitigating factors, Petitioner has not alleged that he informed counsel about those matters. He also does not deny that he did not make a statement at sentencing, thereby forfeiting the opportunity to present those facts. (*See* ECF No. 12-3 at 22.) In addition, Petitioner's general assertion that he would not have received consecutive sentences had counsel presented the remaining mitigating factors is unsupported. As discussed, the sentencing judge considered many factors in arriving at an appropriate sentence, some mitigating and some enhancing. Petitioner has not met the "high bar" of showing that the additional information would likely have made a difference. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland* 's high bar is never an easy task.").

For these reasons, Claim 3 is not substantial.  As Petitioner's procedural default of the claim has not been overcome or excused, the claim is **DISMISSED**.

### 3.  Claim 4

Petitioner asserts in Claim 4 that counsel was ineffective by failing "to challenge the trial court error in sentencing [him] to the maximum sentence in range of 11 years as Range 1 offender[.]"[7]  (ECF No. 1-2 at 7.)  Specifically, he posits that he "should have been classified as a mitigated offender rather than a Range 1 offender" due to his "age (mitigating offenses), familial situation, fatherhood (as a teen age parent), lack of criminal history as a juvenile and adult,[8] and potential for rehabilitation[.]"  (*Id.*)  Respondent argues that Petitioner has not shown that counsel's performance was deficient in this regard.  He also maintains that Petitioner has not established prejudice because he "fails to show that there was any reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]"  (ECF No. 13 at 12.)

The Court concludes that Petitioner has not met *Strickland's* prejudice prong.[9]  As pertinent here, "[a] standard offender is a defendant not sentenced as . . . [a] multiple offender, . . . persistent

---

[7] As a Range 1 standard offender, Hardin's sentencing range for aggravated burglary was "eight to twelve years for each count."  (ECF 12-3 at 22.)  *See also* Tenn. Code Ann. § 40-35-112(a)(2) (a "Range 1 sentence . . . [f]or a Class B felony [is] not less than eight (8) nor more than twelve (12) years[.]").  Therefore, each eleven-year sentence imposed in Petitioner's case was below the maximum.

[8] Petitioner did not "lack [a] criminal history."  The assertion is therefore liberally construed as "limited criminal history."

[9] *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.")

offender, . . . career offender, . . . especially mitigated offender, . . . or . . . repeat offender[.]" Tenn. Code Ann. 4--35-105 (a). "The sentence for a standard offender is within Range 1." *Id.* "The court may find the defendant is an especially mitigated offender, if (1) [t]he defendant has no prior felony convictions; and (2) [t]he court finds mitigating, but no enhancement factors." Tenn. Code Ann. 40-35-109 (a). The sentencing judge in Hardin's case considered and found "both mitigating and enhancing factors." (ECF No. 12-3 at 117, 120-23.) There is therefore no reasonable probability that had counsel done more, Petitioner would have been classified as an especially mitigated offender.

For these reasons, Claim 4 is not substantial. Petitioner's procedural default of the claim is therefore not excused by post-conviction trial counsel's failure to develop the claim. Claim 4 is **DISMISSED**.

## IV.    Claims 5 and 6

In Claim 5, Petitioner asserts that the indictment and related convictions for aggravated robbery violated his double jeopardy rights because he should not have been charged with and did not commit two such offenses. In Claim 6, he argues that counsel was ineffective both at trial and on direct appeal by failing to raise the double jeopardy claim    Petitioner concedes that he procedurally defaulted Claim 5. He asserts several reasons why the claim should nevertheless be assessed on the merits on federal habeas review.

First, he contends that his actual innocence overcomes the default. As the Court has already held, however, Petitioner has not presented a valid gateway claim of actual innocence.

Second, he maintains that the ineffective assistance of post-conviction counsel in failing to raise the double jeopardy claim should excuse the procedural default. The argument is unavailing,

22

however, as *Martinez*'s equitable principle does not apply to save a procedurally defaulted trial-error claim. *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 716 (6th Cir. 2015).

Third, Hardin argues that the procedural default of Claim 5 is excused by post-conviction appellate counsel's ineffective assistance in failing to raise the claim on post-conviction review. As indicated *supra*, such an argument is without merit. *See Young*, 702 F. App'x at 267 (the ineffective assistance of post-conviction appellate counsel cannot excuse a procedural default) (citing *Coleman*, 501 U.S. at 754).

Finally, Hardin contends that the procedural default of the double jeopardy claim should be excused because trial counsel and direct-appeal counsel were ineffective for failing to present the issue. He acknowledges that he did not exhaust these ineffective assistance claims. He proposes, however, that the procedural defaults of *those* claims should be excused because post-conviction trial counsel rendered ineffective assistance by failing to raise them.

In *Edwards v. Carpenter*, 529 U.S. 446 (2000), the Supreme Court held that, to serve as cause to excuse the procedural default of a claim, the ineffective assistance of trial or appellate counsel must have been "presented to the state courts as . . . independent claim[s] before [they] may be used to establish cause for a procedural default.". *Edwards*, 529 U.S. at 451-52 (quoting *Murray v. Carrier*, 447 U.S. 478, 489 (1986)). Accordingly, if Petitioner can demonstrate cause to excuse the procedural defaults of his claims that trial and direct-appeal counsel were ineffective for failing to raise the double jeopardy issue, the bar to federal habeas review of the double jeopardy claim (Claim 5) *and* the free-standing ineffective assistance claims (Claim 6) will be simultaneously lifted.

### A. Direct-Appeal Counsel's Alleged Ineffective Assistance

Petitioner's reliance on post-conviction trial counsel's failure to raise an ineffective-assistance-of-appellate-counsel claim as cause to excuse the procedural default of that claim is misplaced. More to the point, the Supreme Court has refused to extend *Martinez*'s equitable rule to procedurally defaulted claims of ineffective assistance of appellate counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (holding the ineffective assistance of post-conviction counsel is not cause to excuse the default of an appellate-counsel-ineffective-assistance claim). The procedural default of the claim that direct-appeal counsel was ineffective in failing to raise the double jeopardy issue is therefore unexcused.

### B. Trial Counsel's Alleged Ineffective Assistance

As discussed earlier, in order for the ineffective assistance of post-conviction trial counsel to excuse the default of a claim that criminal trial counsel was ineffective, the claim must have "some merit." *Martinez*, 566 U.S. at 14. Petitioner's claim that trial counsel rendered ineffective assistance by failing to argue that his right against double jeopardy was violated does not meet that standard.

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The prohibition ... protects individuals not only from successive trials, but also prohibits multiple punishments for the same offense." *United States v. DeCarlo*, 434 F.3d 447, 454 (6th Cir. 2006) (citing *Witte v. United States*, 515 U.S. 389, 391 (1995) and *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997)).

In relevant part, aggravated robbery under Tennessee law is the commission of a robbery with a deadly weapon.  Tenn. Code Ann. § 39-13-402(a)(1).  "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear."  *Id.* § 39-13-401(a).  "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103.

In *State v. Franklin*, 130 S.W.3d 789 (Tenn. Crim. App. 2003), *perm. appeal denied* (Tenn. Dec. 22, 2003), the case on which Petitioner relies, the defendant and another individual held a store owner and his employee at gunpoint while they took money from the cash register.  *Franklin*, 130 S.W.3d at 791.  The defendant was charged with and convicted of two counts of aggravated robbery.  *Id.*  On appeal, the TCCA held that the defendant's right against double jeopardy was violated by the dual convictions because only one theft occurred.  *Id.* at 798.  The court found that,

> . . . Tennessee appears to distinguish robbery from theft on the basis of the *method* of the taking, rather than on the basis of from whom the property is taken. It is violence that makes robbery an offense of greater atrocity than larceny.  The method of the taking remains unaffected by the number of persons who may be threatened during the crime. Accordingly, we hold that the proper unit of prosecution for robbery in Tennessee is the number of takings, i.e. the number of thefts.

*Id.* at 796-97 (emphasis in original) (citation and internal quotation marks omitted).

Relying on *Franklin*'s reasoning, the TCCA has found double jeopardy violations where defendants were convicted of multiple counts of aggravated robbery in circumstances where there was only one theft.  For instance, in *State v. Cooper*, No. W2005-02481-CCA-R3CD, 2007 WL 4462991, at *1 (Tenn. Crim. App. Dec. 20, 2007), the court reversed all but one of the defendant's four aggravated robbery convictions.  *Cooper*, 2007 WL 4462991, at *12.  Although the defendant

had held several members of the same family at gunpoint when he "stole a Playstation II [and] some video games," the items belonged only to one of the family members. *Id.* In *State v. Williams*, No. W2011-02365-CCA-R3CD, 2013 WL 167285, at *2 (Tenn. Crim. App. Jan. 14, 2013), *remanded on different grounds* (Tenn. Aug. 21, 2013), the TCCA held that the defendant committed only a single aggravated robbery when he held a husband and wife and their children at gunpoint and but took only property belonging to the married couple jointly. *Williams*, 2013 WL 167285, at *10 ("Here, the proof established that the defendant and his confederates took collective property from the presence of both Mr. and Ms. Currie such that only a single taking resulted.") *See also State v. Anthony*, No. W2004-00255-CCA-MR3-CD, 2004 WL 2848380, at *4, 6 (Tenn. Crim. App. Dec. 10, 2004) (holding defendant committed one theft of a grocery store when he took store property by holding multiple employees at gunpoint and noting that "Defendant concede[d] that the offense committed against a customer constituted a separate theft, and therefore a separate aggravated robbery").

The evidence adduced at Hardin's criminal trial showed that he committed two thefts. He took the building contractor's phone and wallet and then took the homeowner's phone and purse. The purse contained several items belonging to the homeowner, including "another cell phone, her ID, keys, some personal items, and $160 to $200 cash." *Hardin*, 2015 WL at *1. The victims were not married and there was no evidence to suggest that they owned any of the property jointly.

Because the facts demonstrated two thefts, an argument by trial counsel that the indictment and the convictions placed Hardin at risk of double jeopardy would have been unavailing. Therefore, a claim that trial counsel was ineffective for failing to advance the futile argument does not have "some merit." The procedural default of the double jeopardy claim therefore cannot be

excused by the failure of trial counsel to advance the argument and, derivatively, by the failure of post-conviction counsel to develop the unsubstantial claim of trial-counsel-ineffective-assistance.

In sum, Petitioner has not overcome or established cause to excuse the procedural defaults of Claims 5 and 6.  The claims are therefore **DISMISSED**.

For all of these reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition.  Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[10]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 8, 2022.

---

[10] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.